IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| DEVIN DONOVAN, INDIVIDUALLY AND AS REPRESENTATIVE BENEFICARY TO THE WRONGFUL DEATH OF RYAN DONOVAN;<br><br>Plaintiff,<br><br>v.<br><br>HEARTLAND REGIONAL MEDICAL CENTER; RACHEL DUNSTON, APRN; MATTHEW PERRY, M.D.; AMANDA AUXIER, APRN; DUSTIN CARPENTER, M.D.; HOLT COUNTY; SHERIFF STEVE PORTMAN; KARISSA D LACOX; JOHN DOE 1; JOHN & JANE DOES 2-10,<br><br>Defendants. | Case No. 5:23-cv-06127-RK |

## ORDER

Before the Court are Defendants Amanda Auxier, APRN, and Dustin Carpenter, M.D.'s motion to dismiss Count III of Plaintiff's complaint (Doc. 14), and Defendants Heartland Regional Medical Center ("HRMC"), Rachel Dunston, APRN, and Matthew Perry, M.D.'s motion to dismiss Plaintiff's complaint (Doc. 16). The motions are fully briefed. (Docs. 20, 21, 36, 37.) For the reasons explained below, Nurse Auxier and Dr. Carpenter's motion to dismiss Count III (Doc. 14) is **GRANTED**; HRMC, Nurse Dunston, and Dr. Perry's motion to dismiss is **GRANTED in part** as to Plaintiff's § 1983 claims against them **and DENIED in part** as to Plaintiff's state law claims against them; and the Court **ORDERS** that: (1) Plaintiff's claims against Nurse Auxier and Dr. Carpenter in Count III are **DISMISSED without prejudice**; and (2) Plaintiff's § 1983 claims against HRMC, Nurse Dunston, and Dr. Perry in Count III are **DISMISSED without prejudice**.

### Background

This case arises from the suicide of Ryan Donovan ("Decedent") by hanging while he was held as a pre-trial detainee at the Holt County Jail in Oregon, Missouri. Plaintiff Devin Donovan is Decedent's son.

Plaintiff filed his complaint September 28, 2023, bringing the following claims:

(1) Violation of civil rights pursuant to 42 U.S.C. § 1983 against Defendants Holt County, Sheriff Steve Portman, Karissa D. Lacox, and John and Jane Does 2-10;

(2) Violation of civil rights pursuant to 42 U.S.C. §1983 against Defendants Holt County and Sheriff Steve Portman;

(3) Violation of civil rights pursuant to 42 U.S.C. § 1983 against Defendants Heartland Regional Medical Center ("HRMC"); Rachel Dunston, APRN; Matthew Perry, M.D.; Amanda Auxier, APRN; Dustin Carpenter, M.D.; and John Doe 1;

(4) Wrongful death under § 573.080, RSMo., against Defendants Holt County, Sheriff Steve Portman, Karissa D. Lacox, and John and Jane Does 2-10; and

(5) Wrongful death under § 573.080, RSMo., against Defendants HRMC; Rachel Dunston, APRN; Matthew Perry, M.D.; Amanda Auxier, APRN; Dustin Carpenter, M.D.; and John Doe 1.

**Legal Standard**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim may be dismissed for "failure to state a claim upon which relief can be granted." A complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Generally, the Court "accept[s] the allegations contained in the complaint as true and draw[s] all reasonable inferences in favor of the nonmoving party." *Cole v. Homier Dist. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)). The principle that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions, however. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To determine whether a complaint states a claim, the Court looks at two factors. First, the Court must identify the allegations that are "not entitled to the assumption of truth." *Id.* at 678. In other words, to state a claim, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Id.* at 678. Second, the Court must determine whether the complaint states a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. This step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The Court must review the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* When faced with alternative explanations for the alleged

2

misconduct, the Court may exercise its judgment in determining whether Plaintiff's conclusion is the most plausible or whether it is more likely that no misconduct occurred. *Id.* at 681-82.

## Discussion

I. **Nurse Auxier and Dr. Carpenter's motion to dismiss Count III of Plaintiff's complaint for failure to state a claim upon which relief can be granted (Doc. 14)**

Nurse Auxier and Dr. Carpenter argue that Plaintiff's allegations against them amount to "medical negligence," and thus are not sufficient to maintain a cause of action for deliberate indifference (or cruel and unusual punishment under the Eighth Amendment), citing *Estelle v. Gamble*, 429 U.S. 97 (1976) and *Gregg v. Georgia*, 428 U.S. 153 (1976). Plaintiff asserts that Defendants' brief ignores over 25 paragraphs of his complaint substantiating his claims against these defendants that are sufficient to raise a reasonable inference that they acted with deliberate indifference to Decedent's serious medical needs by providing medical care so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care for his psychiatric problems.

Title 42 U.S.C. § 1983 permits a litigant to bring suit against any person who, under the color of state law, subjects him to a deprivation of his constitutional rights. "To state a claim under § 1983, a litigant must demonstrate '(1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived him of a constitutionally protected federal right.'" *Hanes v. Sherburne Cnty. Jail*, No. 23-CV-1191 (SRN/LIB), 2024 WL 867800, at *2 (D. Minn. Feb. 29, 2024) (quoting *De Rossitte v. Correct Care Sols., LLC*, 22 F.4th 796, 802 (8th Cir. 2022)).

The Eighth Circuit has explained the application of a § 1983 claim in the context of pretrial detainees' rights to medical care:

> As a pretrial detainee, [Plaintiff's] right to medical care arises under the Due Process Clause of the Fourteenth Amendment. Although [Plaintiff's] claim is rooted in the Fourteenth Amendment, we apply the deliberate-indifference standard that governs claims brought by convicted inmates under the Eighth Amendment.
>
> Whether an official was deliberately indifferent requires both an objective and a subjective analysis. Under the objective prong, [Plaintiff] must establish that he suffered from an objectively serious medical need. To be objectively serious, a medical need must have been diagnosed by a physician as requiring treatment or must be so obvious that even a layperson would easily recognize the necessity for a doctor's attention. Under the subjective prong, [Plaintiff] must show that an official actually knew of but deliberately disregarded his serious medical need. This showing requires a mental state akin to criminal recklessness. Consequently, [Plaintiff] must show more than negligence, more even than gross negligence to

3

> evince deliberate indifference. Merely demonstrating that a prison doctor committed medical malpractice is insufficient to establish deliberate indifference.
>
> An inmate must demonstrate that a prison doctor's actions were so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care.

*Jackson v. Buckman*, 756 F.3d 1060, 1065-66 (8th Cir. 2014) (internal citations and quotation marks omitted).

Here, Plaintiff alleges that Nurse Auxier and Dr. Carpenter knew of Decedent's serious medical need of self-harm or suicide risk, that Decedent had recently attempted suicide, and that he had been started on Wellbutrin, a psychiatric medication, by the providers at HRMC after that previous suicide attempt. Plaintiff alleges that Nurse Auxier and Dr. Carpenter failed to follow standards for diagnosis and treatment of a patient with suicidal ideations and a recent suicide attempt; provided inadequate care and orders; and ignored the reports of other providers, of the Sheriff's deputies, and of Decedent that he was having suicidal ideations. Plaintiff alleges that Decedent advised Nurse Auxier that the Wellbutrin was making him "a nervous wreck." Plaintiff also alleges that Nurse Auxier diagnosed Decedent with "mixed anxiety and depressive disorder," and reduced Decedent's Wellbutrin prescription from 300 mg to 150 mg. Plaintiff alleges Nurse Auxier did not provide instructions to the Sheriff's Office about the medication, monitoring, or a plan for treatment; failed to seek further medical care for Decedent; and failed to institute protective measures for Decedent. Plaintiff alleges that Dr. Carpenter was Nurse Auxier's supervising physician and the person under whose license Nurse Auxier was practicing.

Here, the Court finds Plaintiff's allegations do not reflect that Nurse Auxier's or Dr. Carpenter's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care[,]" but rather, at most amount to allegations of negligence or disagreement with medical decision-making. As such, Plaintiff fails to state a claim for violation of § 1983 by Defendants Nurse Auxier and Dr. Carpenter. Plaintiff's Count Three is therefore **DISMISSED without prejudice** as against Nurse Auxier and Dr. Carpenter.

II. **HRMC, Nurse Dunston, and Dr. Matthew Perry's motion to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted (Doc. 16)**

HRMC, Nurse Dunston, and Dr. Perry argue that Plaintiff fails to state a claim against them under § 1983 because they are not State actors and were not acting under color of state law, and because medical decisions such as those alleged by Plaintiff do not violate the Fourteenth Amendment. Defendants also argue that because Plaintiff's § 1983 claims fail, the Court should

4

Case 5:23-cv-06127-RK   Document 70   Filed 04/01/24   Page 4 of 9

decline to exercise supplemental jurisdiction over Plaintiff's pendent state law claim for medical malpractice resulting in death.

### A. Acts Alleged Do Not Violate the Fourteenth Amendment

Here, Plaintiff has failed to make sufficient allegations to plausibly plead that HRMC, Nurse Dunston, and Dr. Perry's actions, in light of their knowledge of the risks to Plaintiff, were so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care. At most, Plaintiff has alleged medical malpractice or gross negligence.

Plaintiff alleges that through his time at HRMC, the written reports of staff varied as to his symptoms (including their severity) and diagnoses. When Plaintiff arrived at HRMC on May 18, 2022, he was noted to have a closed head injury, suicidal ideation, acute depression, and to be at high risk for suicide attempts. (Doc. 1 at ¶¶ 57-58.) The same day, Plaintiff's suicidal ideation was noted to be "moderate ideation with moderate intent," and his depression was indicated as moderately severe. (*Id.* at ¶ 61, 67.) Later the same day, Dr. Perry prescribed Haloperidol 5mg pills because Plaintiff exhibited signs of agitation and was unable to comply with verbal redirection. Plaintiff was then prescribed 5 mg injectable Haloperidol due to signs of agitation, inability to comply with verbal redirection, refusal of oral medication, or presenting an imminent risk of self-harm or harm to another, and ordered that it be given with Lorazepam—indicating "([m]ay require assistance of other staff and security)." (*Id.* at ¶¶ 68-69.) Dr. Perry placed Plaintiff on suicide precaution at 5:59 pm that day. (*Id.* at ¶ 70.)

The following day, May 19, 2022, Nurse Dunston prescribed Plaintiff Wellbutrin XR 150mg daily. Nurse Dunston noted that Plaintiff should continue on the 96-hour hold with level-three observation, planned post-hospital care as returning to Holt County Jail, and indicated that Plaintiff should establish outpatient care after his release from jail. Nurse Dunston also ordered mental health therapies including group therapy/activity therapy/patient education. (*Id.* at ¶¶ 72-75.)

One day later, on May 20, 2022, Nurse Dunston's record from assessing Plaintiff in his room indicated that she found his affect "bright" and indicated that Plaintiff denied any issues with Wellbutrin and "appears to have made a 'miraculous' recovery from his mood issues overnight." (*Id.* at ¶ 77.) Nurse Dunston also indicated that Plaintiff denied any issues with depression and said his anxiety was "manageable," reported eating and sleeping well, denied any suicidal ideation/harm ideation/auditory or visual hallucinations, and reported his neck pain was better.

5

(*Id.*) Nurse Dunston noted, "Overall, I suspect that his admission was an attempt to leave Holt County Jail. If he continues to present this way tomorrow we will discharge." At 11:00 am that day, Nurse Dunston and Dr. Perry removed the diagnosis for Plaintiff of Major Depressive Disorder but doubled his Wellbutrin to 300 mg and continued level-three observation. They noted that "[o]verall, I suspect that his admission was an attempt to leave Holt County Jail" and "plan for discharge tomorrow as it appears that this admission was most likely for secondary gain." (*Id.* at ¶ 80.) Later that day, a social worker noted:

> Therapeutic groups and activities will be offered during this hospital stay, and medication needs will be addressed. A social worker will be assigned to the patient for assistance building coping skills and discharge planning. The patient is amenable to recommendations for medication adjustments and has established community-based services for support. The patient will return to jail at discharge. The patient will be provided with the crisis hotline number at discharge.

(*Id.* at ¶ 79.)

On May 21, 2022, at 9:33 am, a mental health progress note by an HRMC nurse indicated:

> 0833 Naproxen 500 mg given PO for chronic neck pain rated a 6# (on a pain scale from 0 to 10). [Decedent] rates his depression a 7# & anxiety an 8#, & he has ST's ("but I won't act on them"). He denies both AH's & VH's. His goal is "to figure out what the discharge plan is". His coping skill is "staying in the present". He names family as his support system.

(*Id.* at ¶ 82.) At 9:41 am, another HRMC nurse entered a Discharge Plan Assessment indicating:

> a. Return to Prior Environment w/Prior Services : Yes w/addit[i]onal services
>
> b. Primary Caregiver at Discharge : No one/self sufficient
>
> c. Anticipated Discharge Needs CM : Community resources, Difficulty obtaining medications, Follow up with PCP/Specialist

(*Id.* at ¶ 83.)

Then, at 10:30 am, Nurse Dunston entered an order to discharge Plaintiff back to the correctional facility. (*Id.* at ¶ 84.) In doing so, Nurse Dunston and Dr. Perry related the "Hospital Course" for Plaintiff as follows:

> The patient was encouraged to participate in individual, group, and milieu psychotherapies. They were observed for suicidal behavior and did not display any during the period of observation. [Decedent] presented with a calm and cooperative affect. He reported some minor Depression and anxiety symptoms, however he appeared to present with more signs and symptoms consistent with antisocial personality disorder rather than a mood pathology. He endorsed a pervasive pattern in his life of impulsivity, a consistent pattern of irresponsibility when it comes to work and financial responsibility, a consistent pattern of disregard for the law, and

6

> a clear pattern of no remorse or empathy to those he has hurt. Additionally, he would present wild stories in order to evade discharge, such as not having any psychosis prior to the discharge assessment then discussion how it may be possible that a demon entered him since he has a knife tattooed on his shin. It has not been reported by staff that he is responding to any stimuli nor acting in any way that would be consistent with any type of mania or psychosis. On the day of discharge he denies any SI/Hi. The risk assessment favors this plan. Risks, benefits, and alternatives were discussed. The patient has a workable safety plan without access to weapons or excess medications.

(*Id.* at ¶ 86.)

At discharge, Nurse Dunston and Dr. Perry prescribed a daily prescription for 150 mg Wellbutrin XL and "extended release (bupropion), 300 mg Daily." (*Id.* at ¶ 87.) Defendants HRMC, Nurse Dunston, and Dr. Perry gave no follow up instructions at discharge on the discharge education documents, did not list Decedent's medications, and did not get Decedent's signature on the documents. (*Id.* at ¶ 88.) Nurse Dunston and Dr. Perry indicated in Decedent's chart that "[h]e is returning to Holt [C]ounty jail and will discharge via police hold. He will follow up with the VA psych team." (*Id.* at ¶ 89.)

Plaintiff alleges that Nurse Dunston and Dr. Perry knew that Decedent could not follow up with the VA psych team due to his incarceration in Holt County Jail, made no efforts to evaluate whether Decedent would be held in a safe environment, and gave no instructions for observation for reactions to medication or deterioration in mental condition, including for suicidal tendencies. (*Id.* at ¶¶ 90-91.)

The only allegations that would support a plausible claim that Defendants HRMC, Nurse Dunston, and Dr. Perry's actions and omissions were so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care are not factual allegations. Rather, they are conclusory and speculative statements, unsupported by allegations of a factual nature. In particular, the facts alleged indicate that various staff evaluated Decedent during the course of his stay at HRMC, and that they had different impressions of his symptoms and diagnosis, depending on what he reported to them. From the information gathered by Nurse Dunston and Dr. Perry, they made medical decisions based on the factual allegations. To conclude otherwise would require the Court to improperly accept as true unsupported, conclusory, and speculative allegations that are not entitled to the assumption of truth. For example, this would include the allegations:

> (1) that Nurse Dunston and Dr. Perry opined "without basis" that Decedent "appeared to present with more signs and symptoms consistent with antisocial personality disorder rather than a mood pathology,"

7

(2) that HRMC, Nurse Dunston, and Dr. Perry ended the 96-hour hospitalization early though Nurse Dunston "knew [Decedent] would get no psychiatric treatment or observation" at the jail,

(3) that Nurse Dunston's notation indicating that Decedent's symptoms were more consistent with antisocial personality disorder than mood pathology amounted to "callously opining [Decedent] was a sociopath,"

(4) that Nurse Dunston and Dr. Perry "ignored the reports of other healthcare providers," (as opposed to forming their own opinions based on their personal observations and evaluation),

(5) that the discharge instructions were "inadequate,"

(6) that HRMC, Nurse Dunston, and Dr. Perry knew that Decedent "needed additional psychiatric treatment and protection" and knew "that he would not get the needed help," and finally,

(7) that Nurse Dunston and Dr. Perry "let their personal feeling associated with [Decedent's] criminal record color their medical decision making—overtly, incorrectly and without basis claiming he was a sociopath and that his May 18, 2022 suicide attempt was merely an attempt to get out of jail and for 'secondary gain'."

(*See* Doc. 1 at ¶ 85, 176.) Even assuming for the sake of argument these allegations are not conclusory, speculative, and factually unsupported, the Court would find they otherwise plausibly plead, at most, gross negligence, if not merely a disagreement as to medical decision-making, as opposed to deliberate indifference necessary to state a claim for a constitutional violation under § 1983.

### B. State Law Claims

Because Plaintiff's Fourteenth (and Eighth) Amendment claims under § 1983 fail, Nurse Dunston and Dr. Perry argue the Court should decline to exercise supplemental jurisdiction over Plaintiff's pendent state law claim for medical malpractice resulting in death and thus dismiss that claim. A district court may decline to exercise supplemental jurisdiction if the federal claims over which it had original jurisdiction have all been dismissed. 28 U.S.C. § 1367(c)(3). At this point, however, dismissal of the state-law claims is not permissible. Plaintiff's state-law claims are asserted against other defendants as to whom Plaintiff also asserts federal claims, including Holt County, Sheriff Portman, and John Doe 1. As such, it would be premature to decline to exercise supplemental jurisdiction over Plaintiff's state law claims against Nurse Dunston and Dr. Perry because the Court still has federal question jurisdiction in this case given the § 1983 claims that remain.

8

**Conclusion**

After careful consideration and for the reasons above, Nurse Auxier and Dr. Carpenter's motion to dismiss Count III (Doc. 14) is **GRANTED**; HRMC, Nurse Dunston, and Dr. Perry's motion to dismiss is **GRANTED in part** as to Plaintiff's § 1983 claims against them **and DENIED in part** as to Plaintiff's state law claims against them; and the Court **ORDERS** that: (1) Plaintiff's claims against Nurse Auxier and Dr. Carpenter in Count III are **DISMISSED without prejudice**; and (2) Plaintiff's § 1983 claims against HRMC, Nurse Dunston, and Dr. Perry in Count III are **DISMISSED without prejudice**.

**IT IS SO ORDERED.**

                                                           s/ Roseann A. Ketchmark
                                                          ROSEANN A. KETCHMARK, JUDGE
                                                          UNITED STATES DISTRICT COURT

DATED: April 1, 2024